USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/19/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL INSURANCE COMPANY,

     Plaintiff,

   -against-

BLUESTONE RESOURCES, INC., et al.,

     Defendants.

1:23-cv-04963-MKV

MEMORANDUM & ORDER
GRANTING MOTION
FOR SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

 Federal Insurance Company ("Plaintiff") now moves for summary judgment on all claims against Bluestone Resources, Inc. ("Bluestone Resources"), Bluestone Energy Sales Corp. ("Bluestone Energy"), Southern Coal Corporation ("Southern Coal"), James C. Justice II ("Justice"), and Beech Creek Coal Corporation ("Beech Creek") (the "Defendants").[1]  [ECF No. 51].

 In support of its motion, Plaintiff has submitted a memorandum, [ECF No. 51-1] ("Plantiff's Memorandum" or "Pl. Mem."), a Rule 56.1 statement, [ECF No. 51-2] (the "56.1 Statement"), an affidavit sworn by Plaintiff's representative Douglas J. Wills, [ECF No. 51-3] ("Wills Aff."), and various exhibits thereto, [ECF Nos. 53-1–14] (the "Wills Aff. Exs.").  In opposition, Defendant submitted a memorandum of barely two pages, [ECF No. 52] (the "Opposition" or "Opp."), and nothing else.  Plaintiff replied.  [ECF No. 53] (the "Reply").

---

[1] The Court adopts Plaintiff's manner of referencing the various sub-groupings of Defendants.  *See* [ECF No. 51-2] at 1–2 ("Defendants Bluestone Energy, Southern Coal, and Justice are collectively referred to herein as 'Principal' or 'Judgment Debtors'.  The Principal and Bluestone[] Resources are herein each referred to as an 'Indemnitor' and . . . collectively [are] referred to as the 'Indemnitors'.").

1

**UNDISPUTED FACTS[2]**

In April 2021, the United States District Court for the District of Delaware (the "Delaware District Court") issued a judgment in the amount of $6,814,105.30 in favor of Xcoal Energy & Resources ("Xcoal") against Defendants Bluestone Energy, Southern Coal, and Justice ("the Judgment Debtors"), Wills Aff. Ex. 3, which was subsequently amended to increase the amount of judgment to $10,005,283.08, Wills Aff. Ex. 4 (the "District Court Judgment"). In connection with the Judgment Debtors' appeal from the District Court Judgment, Plaintiff issued a supersedeas bond in favor of Xcoal in the amount of $8,176,927 (the "Supersedeas Bond"). Wills Aff. Ex. 2. In consideration for the Supersedeas Bond, the Judgment Debtors and Bluestones Resource (the "Indemnitors"), in May 2021, executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Plaintiff. Wills Aff. Ex. 1. In the Indemnity Agreement, the Indemnitors agreed to be held jointly and severally liable for Plaintiff's losses, costs, and expenses—and to provide Plaintiff with collateral security upon written request—under the Supersedeas Bond. *Id.*

In July 2022, the Third Circuit affirmed the District Court Judgment. Wills Aff. Ex. 5. Shortly thereafter, Xcoal issued a demand to the Judgment Debtors (the "Xcoal Demand to the Judgment Debtors"). Wills Aff. Ex. 6. Federal received a copy of the Xcoal Demand to the Judgment Debtors, whereupon it issued its own demand to the Judgment Debtors indicating that they were expected to resolve the Xcoal Demand without intervention by Plaintiff. Wills Aff. Ex. 7. The following day, Xcoal issued another demand, this one addressed to Plaintiff, in the amount

---

[2] Because Defendants have declined to respond to Plaintiff's 56.1 Statement; *see also* [ECF No. 44], "[e]ach numbered paragraph in the statement of material facts . . . [is] deemed to [have been] admitted[.]" L. Civ. R. 56.1(c). Nevertheless, "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court [has] not rel[ied] solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement," but instead has "satisfied [itself] that the citation[s] to evidence in the record supports [each relevant] assertion." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

of $8,176,927 (the penal limit of the Supersedeas Bond) (the "Demand to Federal").  Wills Aff. Ex. 8.

A couple of months later, Xcoal filed a motion for enforcement against Plaintiff under the Supersedeas Bond (the "Enforcement Motion"), which was subsequently granted (the "Enforcement Order").  Wills Aff. Ex. 10.  During the pendency of the Enforcement Motion, Plaintiff sent the Indemnitors a demand for $8,176,927 (the "November 2022 Collateral and Indemnity Demand").  Wills Aff. Ex. 9.  The Indemnitors neither satisfied Xcoal's Demand to Federal, nor complied with the November 2022 Collateral and Indemnity Demand.  Wills Aff. ¶¶ 32–33.  Under the Enforcement Order, Plaintiff issued a payment in the amount of $8,176,927 to Xcoal (the "Bond Payment").  Wills Aff. Ex. 11.

Several months later, in March 2023, Plaintiff and Defendants entered into an Agreement Regarding Indemnity (the "Agreement").  Wills Aff. Ex. 12.  The Agreement, which contains a forbearance and tolling clause, *id.* ¶ 3, contemplates then-current losses (the "Surety Loss") incurred by Plaintiff under the Supersedeas Bond of $8,232,914.50, inclusive of $55,987.50 in fees and expenses, *id.* at 2, and provides for a reimbursement schedule, subject to annual interest, with the first payment (of $200,000) due on April 1, 2023 (the "First Installment Payment"), followed by thirty-four payments in the same amount, and culminating in a final installment of the remaining balance, *id.* ¶ 4.  In connection with the Agreement, Defendants executed a Promissory Note and Security Agreement in favor of Plaintiff (the "Note").  Wills Aff. Ex. 13.  Failure to pay installments under the Note, or to perform any obligations under the Agreement and the Indemnity Agreement, constitutes an "Event of Default."  Wills Aff. Ex. 12, ¶¶ 7(a), (b).

The Agreement also provides for, as collateral security, the transfer of title of an Addcar Highwall Mine System (the "High Wall Miner") from Defendants to Plaintiff.  Wills Aff. Ex. 12,

¶ 6.  The Agreement further provides that Defendants take certain steps to effectuate disposition of the High Wall Miner within 180 days from the effective date of the Agreement.  *Id.*  Failure to do so constitutes an Event of Default, triggering an obligation to place the High Wall Miner with a specified auctioneer for sale, with any proceeds to be applied to the outstanding Surety Loss.

Defendants failed to make the First Installment Payment.  Wills Aff. ¶ 58.  Thereafter, on April 14, 2023, Plaintiff issued a letter to the Indemnitors indicating that, notwithstanding receipt of a single payment of $50,000 (the Partial Payment), the Indemnitors were in default under the Note and the Agreement.  Wills Aff. Ex. 14.  Plaintiff further advised those Defendants that the entire First Installment was expected by April 21, 2023.  *Id.*  The Indemnitors did not comply. Wills Aff. ¶ 63.  On May 5, 2023, Plaintiff issued another letter, this time to all Defendants, indicating continued default and demanding payment in the amount of $350,000 (the amount due under the first two installments minus the Partial Payment) by May 12, 2023.  Wills Aff. Ex. 15. Defendants did not make this payment.  Wills Aff. ¶ 67–68.  Nor, upon Plaintiff's information and belief, has the High Wall Miner been sold or placed on auction.  Wills Aff. ¶ 70.  Upon an Event of Default, Plaintiff is entitled to accelerate repayment and seek recovery of the full Surety Loss. Wills Aff. Ex. 12 at 7.

In addition to the $8,176,927 Bond Payment, Wills Aff. Ex. 11, Plaintiff has also incurred $170,595.31 in costs and expenses, including attorneys' fees ("Expenses"), Wills Aff. ¶ 40.[3]  By Defendant's math, adding these two numbers together and subtracting the Partial Payment yields a Surety Loss of $8,297,533.31.[4]  Wills Aff. ¶ 72.  The Court's own arithmetic yields a Surety Loss of $8,297,522.31 (the "Court's Calculation").

---

[3] The amount is calculated through December 31, 2024. Pl. Mem. at 16 n.3.  As will be discussed further below, Defendants contest this figure, or at least the sufficiency of the documentation supporting it.  *See* Opp.

[4] Plaintiff does not seek interest at this time. Pl. Mem. at 17 n.5.

**ANALYSIS**

Plaintiff moves for summary judgment as follows:

- on Count I of Federal's Amended Complaint (Contractual Indemnification/Breach of the Indemnity Agreement), judgment in favor of Federal, and against defendants, Bluestone Resources, Inc., Bluestone Energy Sales Corp., Southern Coal Corporation and James C. Justice, II, jointly and severally, in the amount of no less than $8,297,533.31;

- on Count II of Federal's Amended Complaint (Common Law Indemnification), judgment in favor of Federal, and against defendants, Bluestone Energy Sales Corp., Southern Coal Corporation and James C. Justice, II, jointly and severally, in the amount of no less than $8,126,927.00;

- on Count III of Federal's Amended Complaint (Breach of the Agreement), judgment in favor of Federal, and against defendants, Bluestone Resources, Inc., Bluestone Energy Sales Corp., Southern Coal Corporation, James C. Justice, II and Beech Creek Coal Corporation, jointly and severally, in the amount of no less than $8,297,533.31;

- on Count IV of Federal's Amended Complaint (Breach of the Note), judgment in favor of Federal, and against defendants, Bluestone Resources, Inc., Bluestone Energy Sales Corp., Southern Coal Corporation, James C. Justice, II and Beech Creek Coal Corporation, jointly and severally, in the amount of no less than $8,297,533.31;

- on Count V of Federal's Amended Complaint for specific performance for the disposition of High Wall Miner;

- for such other and further relief as may be just and equitable.

[ECF No. 51] at 1–2 (cleaned up, bullets added).[5]  In other words, Plaintiff seeks 1) the full Surety Loss—including Expenses and crediting the Partial Payment—under the Indemnity Agreement from the Indemnitors, and under the Agreement and Note from all the Defendants; 2) the amount of the Bond Payment—exclusive of Expenses and less Partial Payment—under a common law theory of indemnification from the Judgment Debtors; and 3) specific performance under the Agreement and Note with respect to the disposition of the High Wall Miner.

---

[5] In Plaintiff's Memorandum, Plaintiff purports to seek "no less than $8,182,914.50" in connection with Counts III and IV, but provides no citation for its calculation of this figure.  Pl. Mem. at 21.

Defendants, in their two-page Opposition, contest only "the requested entry of judgment for attorney fees, costs, and expenses of $170,595.31." Opp. at 1. Defendants argue that Plaintiff's affidavit setting forth Expenses is inadequate under caselaw suggesting that "a party seeking recovery of attorney fees must submit itemized invoices for its defense costs and litigation expenses[.]" *Id.* at 2 (quotation omitted). Defendant also points to Federal Rule of Civil Procedure 54(d), which governs the award of costs and attorneys' fees to a prevailing party in connection with the entry of a judgment. *Id.*

Plaintiff's request for Expenses is based upon a clause in the Indemnity Agreement that provides that the "INDEMNITORS shall indemnify, exonerate, and save harmless Federal from and against any and all liability, claims, demands, losses, costs, damages, and expenses, including, without limitation, any and all attorneys' . . . fees, expenses, costs, and disbursements," and that "a copy of the claim, demand, voucher, or evidence of the payment by Federal of any liability, claims, demands, losses, costs, damages, and expenses shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to Federal under this Indemnity Agreement." Pl. Mem. at 4–5 (quoting Wills Aff. Ex. 1 ¶ 2 (cleaned up)). The Agreement likewise provides for reimbursement of the Surety Loss, defined to include "any and all loss, claims, costs, expenses, including without limitation, attorneys' fees, for which the Indemnitors are obligated under the Indemnity Agreement." Pl. Mem. at 18–19 (quoting Wills Aff. Ex. 12 ¶ 5). The Note contains a provision to the same effect. Wills Aff. Ex. 13 at 1 (defining "Surety Loss").

Defendants' attempt to further forestall the operation of their various agreements with Plaintiff fails. At the outset, and in response to Defendants' citations to Federal Rule of Civil Procedure 54(d) and *JTRE Manhattan Ave. LLC v. Capital One, N.A.*, No. 21 Civ. 574 (JLR), 2024 WL 4880075 (S.D.N.Y. Nov. 25, 2024), *see* Opp. at 2, the Court notes that Plaintiff "is not

6

submitting a fee application for Court approval." *Reid v. Telentos Constr. Corp.*, No. 15 Civ. 2358 (SJB), 2020 WL 6152494, at *7 (E.D.N.Y. Oct. 20, 2020).   "Unlike when awarding statutory attorneys' fees, it is not the Court's role to determine what an award of 'reasonable' attorneys' fees should be based upon its scrutiny of the hours and the hourly rates of the attorneys." *U.S. Fid. & Guar. Co. v. Sequip Participacoes, S.A.*, No. 98 Civ. 3099 (THK), 2003 WL 22743430, at *8 n.4 (S.D.N.Y. Nov. 19, 2003).  This is instead a matter concerning the "enforce[ment of] a contract[.]" *Telentos*, 2020 WL 6152494, at *7.   And "New York courts have enforced very similar agreements to the one at issue here." *Berkley Reg'l Ins. Co. v. Weir Bros.*, No. 13 Civ. 3227 (CM) (FM), 2013 WL 6020785, at *7–8 (S.D.N.Y. Nov. 6, 2013) (citing *Prestige Decorating & Wallcovering, Inc. v United States Fire Ins.*, 49 A.D.3d 406, 406, 858 N.Y.S.2d 1, 1–2 (1st Dep't 2008); *Frontier Ins. Co. v. Renewal Arts Contr. Corp.*, 12 A.D.3d 891, 892, 784 N.Y.S.2d 698, 700 (3d Dep't 2004)); *Int'l Fid. Ins. Co. v. Spadafina*, 192 A.D.2d 637, 639, 596 N.Y.S.2d 453, 454 (2d Dep't 1993); *First Indemnity of America Ins. Co. v. Shinas*, No. 3 Civ. 6634 (KMW) (KNF), 2009 WL 3154282 (S.D.N.Y. Sept. 30, 2009)).

"Once a plaintiff meets its burden by establishing a prima facie case," *Weir Bros.*, 2013 WL 6020785, at *8—here, by submitting "evidence of the payment by Federal of any . . . expenses[,]"  Wills Aff. Ex. 1 ¶ 2—"in order to avoid summary judgment, [Defendants] must demonstrate the surety payments were in bad faith or for an unreasonable amount."  *Weir Bros.*, 2013 WL 6020785, at *8.

Here, "[t]he contract clearly entitles Plaintiff to indemnification for costs incurred in its enforcement of the Indemnity Agreement." *Weir Bros.*, 2013 WL 6020785, at *12.  And Plaintiff has submitted a sworn, itemized chart evidencing the fact and amount of such costs incurred. *See* Wills Aff. ¶ 40.  This constitutes *prima facie* evidence of its entitlement to summary judgment

upon the Expenses.  *See* Wills Aff. Ex. 1 ¶ 2; Wills Aff. Ex. 12 ¶ 5; Wills Aff. Ex. 13 at 1; *Telentos*, 2020 WL 6152494, at *7 ("[T]he . . . Affidavit avers that the expenses were paid by Colonial.  This is sufficient 'other evidence' to make out a *prima facie* right to reimbursement from the Demoneris Defendants under the Indemnity Agreement." (citations omitted)); *Utica Mut. Ins. Co. v. Cardet Const. Co.*, 114 A.D.3d 847, 849, 981 N.Y.S.2d 118, 121 (2d Dep't 2014) ("Utica met its prima facie burden by submitting the indemnification agreement, the performance bond, and itemized statements of attorney fees and expenses." (citations omitted)); *Colonial Sur. Co. v. Millennium Century Const., Inc.*, 44 Misc. 3d 1221(A), 999 N.Y.S.2d 796, at *3 (N.Y. Sup. Ct. N.Y. Co. 2014) ("Courts, including the First Department, have upheld the efficacy of such 'prima facie' clauses, recognizing that such an itemized statement of loss and expenses may properly constitute prima facie evidence of entitlement to indemnification, as well as the amount to be indemnified."); *Prestige Decorating and Wallcovering, Inc. v. U.S. Fire Ins. Co.*, No. 601804/04, 2007 WL 5555819 (N.Y. Sup. Ct. N.Y. Co. May 10, 2007) ("Pursuant to the terms of the Indemnity Agreement, USFIC's submission of a sworn itemized statement of loss and expense, was prima facie evidence of the fact and extent of Swig's liability."), *aff'd* 49 A.D.3d 406, 858 N.Y.S.2d 1.

"[T]he [D]efendants [have] failed to raise [any] triable issue of fact regarding the reasonableness of the attorney fees and expenses, or [Plaintiff's] good faith in incurring such fees and expenses." *Utica*, 114 A.D.3d at 849, 981 N.Y.S.2d at 121 (citations omitted).  At best, in their two-page Opposition, Defendants challenge only the request for attorneys' fees, costs, and expenses.  In so doing, "Defendants . . . raise a number of sweeping, generalized arguments in opposition to the motion, including that Plaintiff failed to substantiate the amounts sought and that Plaintiff has failed to include proof of payment of such amounts." *Millennium Century*, 44 Misc. 3d 1221(A), 999 N.Y.S.2d 796, at *3.  In other words, "they merely contend that more backup

8

information is necessary to support Plaintiff['s] claim." *Sequip*, 2003 WL 22743430, at \*8. "Th[is]

argument has no merit." *Telentos*, 2020 WL 6152494, at \*7, \*8.

"Absent a claim that a surety acted unreasonably or in bad faith, there is no requirement

that a surety's expenditures in defending a claim be 'scrutinized' by the court. *Sequip*, 2003 WL

22743430, at \*8. Defendants, who have declined to file a Rule 56.1 counterstatement or any

supporting evidence, have not even approached a showing of unreasonableness or bad faith. *See*

*Telentos*, at \*8; *Colonial Sur. Co. v. Eastland Constr., Inc.*, 160 A.D.3d 437, 438, 76 N.Y.S.3d 1, 2

(1st Dep't 2018); *Am. Home Assur. Co. v. Gemma Const. Co.*, 275 A.D.2d 616, 619, 713 N.Y.S.2d

48, 52 (1'st Dep't 2000); *Spadafina*, 192 A.D.2d at 639, 596 N.Y.S.2d at 454.

Nor, in any event, are the cases Defendants cite for the proposition that the evidence

Plaintiff submitted is "not good enough" applicable here. *See* Opp. at 2 (citing *United Parcel Serv.*

*v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 268 (S.D.N.Y. 2013); *LM Ins. Corp. v. Safety Nat'l*

*Cas. Corp.*, 695 F. Supp. 3d 270, 300–01, (E.D.N.Y. 2023)). Both cases involved breached duties

to defend plaintiffs in personal injury actions under insurance policies bearing little apparent

resemblance to the surety agreements at issue here. *See* Reply at 6 n.3. More significantly, in

neither case was there any mention of a *prima facie* clause like the one that governs here, and,

moreover, it seems that the record in each case was entirely devoid of any evidence of the costs,

fees, and expenses sought. *See United Parcel Serv.*, 983 F. Supp. 2d at 268 ("Because UPS has

not submitted invoices for its defense costs and litigation expenses, a specific award of damages

for breach of contract cannot be made at this time."); *LM*, 695 F. Supp. 3d at 300–01 ("Although

Safety has submitted invoices detailing some of Raymours's past costs in the underlying action,

Safety has not submitted any invoices for ***its*** defense costs, fees, and litigation expenses. . . .

Similarly, LM has not submitted any invoices or other exhibits detailing Pergament's costs and

fees in the underlying action.  Therefore, the Court finds that separate briefing on litigation fees and costs is required regarding the specific amount of any damages award." (emphasis original)). Accordingly, these cases do not support Plaintiff's position that, "[i]n the absence of substantiated, detailed invoices sufficient on their face to support a judgment, collateral proceedings are required to determine a specific, appropriate measure of costs and fees."  Opp. at 2.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted on all counts.  The Clerk of Court is directed to enter judgment for Plaintiff in the amount of $8,297,522.31 and for specific performance of the disposition of the High Wall Miner, and to terminate this case.

**SO ORDERED.**

**Dated:** **New York, NY**
       **February 19, 2026**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**